## CANEJA *v.* THE PEOPLE.

### APPEAL from the District Court of San Juan.

No. 42.—Decided April 10, 1907.

TAXES—ASSESSMENT OF PROPERTY—DECISION OF BOARD OF EQUALIZATION AND REVIEW.—Section 310 of the Political Code, providing that the decisions of the Board of Equalization and Review, created by section 308 of the said Code, shall be final in all matters submitted for its consideration and decision, has not been repealed by the Act of March 10, 1904, which amended section 314 of said Code, because the amendments made do not grant any appeal whatever to the ordinary courts from the decision of the Board of Equalization and Review.

ID.—MANIFEST ERRORS IN ASSESSMENT SHEETS.—It may be that a remedy is open for the party where manifest errors appear in the assessment of his property and the Treasurer refuses to make the necessary correction, but such errors may be committed with respect to the name of the property owner, the amount of land, the jurisdiction within which the same is situated, and even as to the value thereof which may appear from the assessment rolls themselves or from an examination thereof in relation with the documents pertaining to the property involved, such as the declarations of

property owners, valuations placed upon property by assessors and the decision of the Board of Review; but errors which require proof cannot be considered manifest, such as errors on the part of the board in fixing the valuation of property.

The facts are stated in the opinion.

*Mr. Morera* for appellant.

*Mr. Rossy, fiscal,* for respondent.

MR. JUSTICE HERNÁNDEZ delivered the opinion of the court.

While Marcos Tomás Caneja was the owner of an estate consisting of 497 *cuerdas* in the *barrio* of Pueblo Viejo in the municipal district of Bayamón, it was appraised, with some other real property thereon, by an expert appraiser of the Treasury Department and valued at the sum of $20,700 for the purposes of the tax assessment for the fiscal year 1904-5, but the Board of Review and Equalization to which Caneja appealed from the assessment of his estate, at the session corresponding to said fiscal year, reduced the assessment in the following manner: 100 *cuerdas* of *malojillo,* at $8,000; 70 *cuerdas* of pasture, $2,500; 30 *cuerdas* more of pasture, $700; 247 *cuerdas* of uncleared land, $300; 50 *cuerdas* of land of the first and second class, suitable for sugar cane, $3,000; one house, $1,500; another house, $100; and a well, $300, said items making a total of $17,300.

The appellant was not satisfied with the aforesaid reduction and filed a complaint in the District Court of San Juan on September 26, 1904, against The People of Porto Rico, and after having made a number of allegations tending to show that the assessment was excessive on account of an error in the classification of the quality of the lands, he concluded with the prayer that in due time the decision of the board of review should be reversed, and that it be held that the estate in question, with its appurtenances, is worth only $5,696.54, and adjudging the defendant to return the amounts it may have collected in excess of said valuation, with the proper legal interest, and the costs.

The fiscal of the said court alleged in his answer on behalf of The People of Porto Rico, that the valuation of the Board

of Review was valid and just, and prayed that the complaint be dismissed, with the costs against the plaintiff.

The trial having been held, the lower court, in view of the allegations, evidence and arguments of the parties, held that the facts and the law were in favor of the defendant, and therefore, by judgment of February 5, 1906, dismissed the complaint, with the costs against the plaintiff.

An appeal was taken from this judgment by counsel for Marcos Tomás Caneja, who maintained said appeal on the ground that the findings on the evidence were erroneous, while counsel for The People of Porto Rico contested the judgment, alleging among other reasons relating to the merits of the question at issue, that the District Court of San Juan lacked jurisdiction to take cognizance of the case.

Let us consider this exception, which must be qualified as a demurrer, and to this end let us examine the provisions of law which bear relation thereto—that is to say, sections 308, 310, and 314 of the Political Code of Porto Rico, section 314 as amended by the Act of the Legislative Assembly, approved March 10, 1904, entitled "An Act to amend Title IX of the Political Code, and for other purposes."

The first of said sections created a permanent Board of Review and Equalization, composed of the Treasurer of Porto Rico, the Secretary, the Commissioner of the Interior, and two other persons, citizens of Porto Rico, versed in matters pertaining to the value of property in Porto Rico; which board was to pass on all claims made by taxpayers in respect to the assessment of their properties.

Section 310 provides, among other particulars concerning the functions of said board, that its decision in all matters coming before it shall be final, and that in executing the duties imposed upon it, it may examine, on oath or affirmation, any person or persons who may have any knowledge of, or information concerning, the value of property subject to taxation.

Section 314, as amended by the said Act of March 10, 1904, provides that the schedules containing the assessments, when duly examined, verified, corrected, and revised in accordance with the law, and bound by the Treasurer, shall be conclusively presumed by all courts and tribunals to be valid, and shall not be changed or set aside except by way of the correction of manifest error.

Considering the organization of the Board of Review and Equalization as by section 308, its decision in the matter of the valuation of property must offer more guarantees of correctness than those of a court of law, whether uni-personal or collegiate, whose members need not be versed in matters relating to the value of property in Porto Rico, as is the case with the persons who must compose said board.

Furthermore, the Board of Review hears the aggrieved parties and admits evidence for the proper discharge of their functions, and such evidence, with the assistance which can be given the board by its two members versed in matters relating to the value of property are unknown to the judge or court of law to which an appeal is taken from such decision of the board which might be reversed on evidence different and even contrary to that which served as a basis therefor, because it is not logical to assume that the appellant would submit to the court of law evidence which had been adverse to him before the Board of Review especially when it is considered with what ease the evidence desired may be found in a matter which is subject to such diversity of opinion as the valuation of property.

Without doubt, for the reasons set forth, and for other reasons which will not have escaped the wise penetration of the legislator, section 310 provides that the decision of the board in all matters presented to it, shall be final; and in view of such an absolute and specific provision any discussion is useless. *Dura lex, sed lex.*

This provision has not been repealed by the Act of the Legis'at've Assembly of March 10, 1904, which amended sec-

tion 314 of the Political Code, because if such had been the
intention of the legislature, it would have established the
proper remedy against the decisions of the Board of Rewiew
and would have determined before whom it should be pur-
sued; and although it provides that the schedules containing
the assessments, after having been duly examined, verified,
corrected, revised and bound, shall be conclusively presumed
by all courts and tribunals to be valid and shall not be·
changed or set aside except by way of the correction of mani-
fest errors, such an amendment does not involve the allow-
ance of an appeal to the ordinary jurisdiction from the de-
cisions of the Board of Review, and, at the utmost some rem-
edy which might be afforded, though we do not discuss what
it might be, for the correction of manifest errors in the sched-
ules, in the event that the Treasurer should refuse to make
the proper correction and should proceed to collect a tax
founded on manifest error.

It is possible for manifest errors to be committed in the
schedules, through some mistake in the name of the owner
of an estate, its area, the municipal district in which it is
situated, and even in the valuation which may have been
given it; such errors may appear on the face of the schedules
themselves or from an examination thereof in relation with
the documents concerning the estate involved, such as the dec-
larations of the owners, the assessments of the appraisers,
and the decision of the Board of Review; but those errors
which instead of appearing at a mere glance, require proof by
witnesses, as occurs in this case where the only ground alleged
for the reversal of the decision of the Board of Review is an
error committed by it in the valuation of the estate of Marcos
Tomás Caneja, cannot be called manifest errors.

A case similar to this one has already been decided by
this Supreme Court on this date, said case being that of
*Mercedes A. Guitian et al. v. The People of Porto Rico,*
wherein the opinion was delivered by Mr. Justice MacLeary,

which opinion we indorse here as applicable to the question at issue.

In view of the reasons above set forth, as the District Court of San Juan lacks jurisdiction, to take cognizance of the action brougt by Marcos Tomás Caneja, the judgment appealed from should be affirmed, with the costs of the appeal also against the appellant.

*Affirmed.*

Chief Justice Quiñones and Justice Figueras, MacLeary and Wolf concurred.